## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**BOB KRIST,**

*Plaintiff,*                                    **CIVIL ACTION NO. 16-6251**

**v.**

**SCHOLASTIC, INC.,**

*Defendant.*

## MEMORANDUM OPINION

**Rufe, J.**                                    **November 18, 2019**

Plaintiff Bob Krist, a professional photographer, initiated this civil action against

Defendant Scholastic, Inc. based on a claim of copyright infringement, in violation of the

Copyright Act.[1] Although Scholastic obtained access to use Krist's photographs in accordance

with a limited licensing agreement, Krist argues that Scholastic's use exceeded the licensing

agreement's terms, and therefore infringed Krist's copyrights. Plaintiff now moves for partial

summary judgment with respect to certain photographs and Defendant moves for summary

judgment with respect to all of the photographs. For the reasons that follow, both motions will be

granted in part and denied in part.

### I. FACTS

#### A. The Agreements

Krist is a National Geographic professional photographer who monetized his photographs

through the stock photography agency Corbis Corporation.[2] Around 1995, Krist began

participating in the Corbis Copyright Registration Program.[3] Through the program, Krist would

assign to Corbis the rights to his photographs solely for the purpose of copyrighting the

---

[1] 17 U.S.C. §§ 501 *et seq.*
[2] Declaration of Bob Krist in Support of Plaintiff's Motion for Partial Summary Judgment [Doc. No. 84] at 1.
[3] *See id.*

photographs.[4] Corbis then copyrighted the photographs through a group registration program whereby multiple photographers' work was copyrighted at once under the Corbis name.[5] After registering the photographs, Corbis assigned back to Krist complete copyright ownership of all the photographs.[6]

Krist also entered into a representation agreement with Corbis.[7] This agreement authorized Corbis to issue limited licenses to third parties for the use of Krist's photographs in exchange for a percentage of the license fee charged.[8] Corbis then entered into agreements, referred to by the parties as "Preferred Vendor Agreements" ("PVAs"), with different third parties, which shaped the licensing procedures between Corbis and the individual licensees.

Scholastic was one such licensee of photographs. In 2004, Corbis and Scholastic entered into a Preferred Pricing Agreement ("2004 PVA")[9] to govern license agreements.[10] In 2008, and again in 2011, Corbis and Scholastic entered into new PVAs ("2008 and 2011 PVAs").[11]

These PVAs listed prices, terms, and rights for a range of uses of photographs, based on factors including the estimated print run, size of the image, and territory where the publication would be sold.[12] Corbis gave Scholastic access to its stock photo collection through its internal, password-protected archive.[13] Scholastic would select images it wanted to use and notify Corbis of the anticipated usage of the selected photographs.[14] Corbis would then issue an invoice for the

---

[4] *See id.*
[5] *See id.*
[6] *See id.*
[7] *See id.* at 2.
[8] *See id.*
[9] Although the agreements are titled "Preferred Pricing Agreements" because the parties refer to them as PVAs the Court will do so as well.
[10] Defendant's Renewed Motion for Summary Judgment, Exhibit U to Declaration of Nicole Bergstrom [Doc. No. 82] ("Bergstrom Decl.").
[11] Bergstrom Decl., Ex. V & W.
[12] Bergstrom Decl., Ex. X at 2, 5.
[13] *See id.* at 3–4.
[14] *See id.*

use of the selected photograph, with the limitations such as print run, geography, and duration included, based on the applicable PVA .[15] There is no dispute that Scholastic paid the fee specified in the invoices. Krist's only allegation is that Scholastic exceeded the scope of the invoices, i.e., that if an invoice allowed a print run of 50,000, Scholastic would pay for 50,000 but then print far more.

### B. The Complaint

On November 30, 2016, Krist filed a Complaint against Scholastic alleging that Scholastic had exceeded the scope of the licenses it had agreed to with Corbis.[16] Krist attached to the Complaint exhibits containing 45 rows of photographs — with each row containing an image and the name of the image, along with a corresponding invoice number[17] and the copyright registration number[18] — as to which he alleged Scholastic exceeded the scope of the limited license it obtained from the invoice.[19] In his deposition, Krist explained how the alleged infringing uses in the Complaint were compiled — all 45 were selected based only on the knowledge that the photographs had been licensed to Scholastic and the belief that Scholastic had a history of exceeding licenses.[20] At the time he filed the Complaint, Krist had no other information suggesting that Scholastic infringed on his copyrights.[21]

---

[15] *See id.* at 4.
[16] Complaint [Doc. No. 1].
[17] There are some duplicate photographs listed in the Complaint, but each has a different invoice number indicating that Krist alleges that Scholastic obtained multiple invoices for the use of the same photographs and exceeded each of the invoices.
[18] One photograph, "Uros women on reed island in Lake Titicaca," listed in row 40, lacks copyright registration information.
[19] Complaint [Doc. No. 1].
[20] Bergstrom Decl., Ex. C at 30:11–19; 113:18–114:16.
[21] *See id.*

### C. Krist's Knowledge of Potential Claims

When exactly Krist had knowledge of Scholastic's alleged wrongdoings is hotly disputed. It is uncontested that Krist was informed that he had a potential claim against Scholastic by his counsel, Maurice Harmon, who was Krist's neighbor. The details of how and when these contacts occurred have evolved throughout the litigation.

In the deposition conducted in this case, Krist repeatedly testified that Harmon first reached out to him in 2014 and, accordingly, their first meeting was also in 2014.[22] After the close of discovery, Scholastic learned that, in a separate case Krist filed against a different publisher, Krist had represented that Harmon and Krist first met in 2013.[23] Scholastic then moved to reopen discovery and continue Krist's deposition.[24] Krist responded by serving a revised interrogatory admitting that he was first contacted by Harmon in "mid-November 2013 regarding potential copyright infringement claims against textbook publishers" and that the first substantive discussion regarding Harmon potentially representing Krist and searching for documents occurred in a social setting on November 22, 2013.[25]

While Scholastic's motion to reopen discovery was pending, Krist responded to interrogatories served in the other case with a statement indicating that his first meeting with Harmon actually occurred on November 14, 2013.[26] In this interrogatory response, Krist maintained that at the November 22, 2013 social gathering, he and Harmon "engaged in initial discussions about potential representation in copyright matters."[27]

---

[22] *See, e.g.*, Bergstrom Decl., Ex. C at 9:5–7.
[23] Motion to Reopen Discovery [Doc. No. 47] at 5–7.
[24] *See id.*
[25] Bergstrom Decl., Ex. Y at 2–3.
[26] Bergstrom Decl., Ex. II at 3.
[27] *Id.*

The Court then reopened discovery for the "limited purpose of permitting the continued deposition of Plaintiff Bob Krist regarding: (1) the precise date and circumstances regarding the initial conversation between Krist and his counsel, and (2) any information known to Krist about Scholastic's use before his conversation with his counsel."[28]

At his continued deposition, Krist testified that it was at the November 14, 2013 lunch meeting with Harmon that they first discussed the issues in this case.[29] Although Krist had no information of his own to suggest that Scholastic infringed on his photographs, Krist testified that Harmon told him that he thought Krist "would have a case against several publishers."[30] Krist explained that Harmon did not indicate any specific photographs that had been infringed.[31] Rather, Harmon's basis for concluding that Krist might have a copyright infringement claim was that there seemed to be a pattern among publishers, including Scholastic, to infringe copyrights.[32] At this lunch, Krist testified that the "whole issues came out."[33] After leaving this lunch, Krist testified that he was aware "that there may be some copyright infringement cases that might be worth pursuing," and told his wife as much.[34]

Krist also testified that nothing about the substance of the claims was discussed at the November 22, 2013 social gathering.[35] After these conversations Krist put the matter "on the shelf to do the other things" and it was "relegated to, you know, something that we were going to come back to and do more thinking about."[36] Krist explained that he "pushed it further down the

---

[28] Order [Doc. No. 71] at 5–6.
[29] Bergstrom Decl., Ex. C at 125:21–126:4.
[30] *Id.* at 132:13–17.
[31] *See id.* at 26:25–27:2.
[32] *See id.* at 26:10–17.
[33] *See id.* at 126:3–4.
[34] *Id.* at 141:19–24.
[35] *See id.* at 145:22–146:13.
[36] *See id.* at 141:25–148:14.

queue than it deserved at that point" because "I don't enjoy learning that I've been ripped off. It's not pleasant. So I had a million other things to deal with, so I dealt with them."[37]

At his continued deposition, Krist also identified another previously undisclosed meeting with Harmon on December 26, 2013.[38] In April 2014, Krist contacted some of his photographer friends whose names Harmon had given as references.[39] It was not until November 30, 2016, more than three years after Krist and Harmon first met about these issues, that Krist initiated this suit.

### D. Cross-Motions for Summary Judgment

Plaintiff seeks partial summary judgment against Scholastic for the following eight claims, based on four of the photographs[40] listed in the complaint:

1) the use of "Rainforest Landscape"[41] on the title page of Scholastic's publication *Rain Forest Homes*.[42] Scholastic made 221,682 copies of the publication.[43] Scholastic's license for this photograph authorized a print run of 50,000 and included an expiration date of January 9, 2008.[44]

2) the use of "Touro Synagogue Altar."[45] This photograph appears in Scholastic's publication *Scholastic Book of World Records 2012*.[46] Scholastic made 511,202 copies of the book.[47] Scholastic's license allowed a print run of up to 500,000 copies in that publication.[48] "Touro Synagogue Altar" also appeared in *Scholastic Book of*

---

[37] *Id.* at 148:9–148:14.
[38] *See id.* at 150:13–19.
[39] *See id.* at 189:9–190:3.
[40] Plaintiff identifies his claim as seeking "partial summary judgment of liability against Scholastic for five instances of copyright infringement." Plaintiff's Renewed Motion for Partial Summary Judgment [Doc. No. 86] at 7–10. However, although Plaintiff separates out the two times "Touro Synagogue Altar" is listed in the complaint as two separate claims for summary judgment, Plaintiff combines the three uses of "Scarlet Macaw on a Tree Branch" into a single claim for summary judgment and the two uses of "Thunder and Lightning" into another single claim for summary judgment. Therefore, Plaintiff's motion covers eight of the 45 claims in the complaint.
[41] Identified in Exhibit 1, row 21 of the Complaint [Doc. No. 1].
[42] Exhibit 1 to Murphy Declaration [Doc. No. 85].
[43] Exhibit 2 to Murphy Declaration [Doc. No. 85].
[44] Exhibit 13 to Murphy Declaration [Doc. No. 85].
[45] Identified in Exhibit 1, rows 30 and 41 of the Complaint [Doc. No. 1].
[46] Exhibit 4 to Murphy Declaration [Doc. No. 85].
[47] Exhibit 5 to Murphy Declaration [Doc. No. 85].
[48] Exhibit 14 to Murphy Declaration [Doc. No. 85].

*World Records 2010*.[49] Scholastic made 847,350 copies of the book[50] but provided no license authorizing the use of the photograph in the book.

3) the use of "Scarlet Macaw on a Tree Branch"[51] in Scholastic's publication *Disney Yearbook 2006*.[52] Plaintiff lists this photograph three times in the complaint with three separate invoices. Scholastic made 315,000 copies of *Disney Yearbook 2006*[53] but did not provide a license for the photograph.[54]

4) the use of "Lifeguard on Duty"[55] in both of Scholastic's versions of *Thunder and Lightning*.[56] Between the two versions, the photograph was copied 518,000 times[57] but Scholastic has not provided any license for its use of the photograph.[58]

Krist also seeks dismissal of Scholastic's affirmative defenses and a finding that Scholastic's infringements were willful. Plaintiff has not presented any evidence showing infringement for any of the other photographs cited in the complaint.

Defendant seeks summary judgment on all of Plaintiff's claims based on: 1) Plaintiff's alleged invalid copyright registration; 2) Plaintiff's failure to show unauthorized copying by Scholastic;[59] 3) the statute of limitations; and 4) the allegation that Plaintiff's claims are not actionable under copyright law and are instead contract claims.

## II.    LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[60] A court will award summary

---

[49] Exhibit 6 to Murphy Declaration [Doc. No. 85].
[50] Exhibit 7 to Murphy Declaration [Doc. No. 85].
[51] Identified in Exhibit 1, rows 1, 12, and 13 of the Complaint [Doc. No. 1].
[52] Exhibit 8 to Murphy Declaration [Doc. No. 85].
[53] Exhibit 9 to Murphy Declaration [Doc. No. 85].
[54] Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Renewed Motion for Partial Summary Judgment [Doc. No. 93] at 9.
[55] Identified in Exhibit 1, rows 8 and 28 of the Complaint [Doc. No. 1].
[56] Exhibit 10 to Murphy Declaration [Doc. No. 85].
[57] Exhibit 12 to Murphy Declaration [Doc. No. 85].
[58] Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Renewed Motion for Partial Summary Judgment [Doc. No. 93] at 10.
[59] For two of the uses Defendant also claims that it affirmatively proves that its use was authorized by the relevant licenses.
[60] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[61] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[62] A dispute is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[63]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[64] Further, a court may not weigh the evidence or make credibility determinations.[65] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[66] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[67] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[68]

## III. DISCUSSION

### A. The Burden of Proof in Copyright Cases

A copyright owner has the "exclusive rights" to copy or distribute copies of the work.[69] The copyright owner may "authorize" another person to copy or distribute the copyrighted material through a license.[70] "Since a nonexclusive license does not transfer ownership of the

---

[61] Fed. R. Civ. P. 56(a).
[62] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[63] *Id.*
[64] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).
[65] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1988).
[66] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[67] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).
[68] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).
[69] 17 U.S.C. § 106.
[70] 17 U.S.C. § 101.

copyright from the licensor to the licensee, the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license."[71]

The Supreme Court has identified only two elements for a copyright-infringement claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[72] But in cases where the parties agree that the defendant possessed a license but the scope of the license is at issue, the Courts of Appeals have differed on which party bears the burden of proving that the defendant's copying was unauthorized.

The Seventh Circuit recently held that "a plaintiff is not required to prove that the defendant's copying was unauthorized in order to state a prima facie case of copyright infringement."[73] The court thus overruled an earlier case that had added the word "unauthorized" to the second element of copyright infringement, explaining that the addition was a "transcription error."[74] Therefore, the court explained that "the burden of proving that the copying was *authorized* lies with the defendant."[75] Further, the court explained that "[t]his rule makes sense: "proving a negative is a challenge in any context, and if there is evidence of a license, it is most likely to be in the possession of the purported licensee."[76]

In contrast, the Second Circuit holds that "in cases where only the scope of the licenses is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized."[77] Because the "existence of a license [is] essentially uncontested in [these]

---

[71] *MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991) (citation omitted).
[72] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).
[73] *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760–61 (7th Cir. 2016).
[74] *Id.*
[75] *Id.*
[76] *Id.* (internal quotations omitted).
[77] *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104–05 (2d Cir. 2019) (quoting *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)).

case[s]," evidence of copying does not demonstrate infringement.[78] Thus, the plaintiff has the burden of showing that an infringement actually occurred.

Third Circuit case law has evolved in recent years. In *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.* the Court of Appeals held that "a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."[79] Applying this standard in scope of license cases, courts placed the burden on the plaintiff to show that the defendant exceeded the scope of its license.[80]

However, in a recent opinion ruling on a petition for mandamus in a separate case brought by Krist against another publisher, the Third Circuit in *In re McGraw-Hill Global Education Holdings LLC* expressly adopted the Seventh Circuit's approach.[81] The panel held that "*Dun & Bradstreet*'s inclusion of 'unauthorized' as part of the second element appears to be an error" because "[t]he precedent *Dun & Bradstreet* cites as support of the listed elements . . . do not include the term "unauthorized" in their listing of the second element. Nor has the Supreme Court held that *unauthorized* copying is the second element of a copyright claim.[82] Therefore, the panel held that showing that the copying is unauthorized "is not part of the photographers' prima facie case."[83]

Defendant argues that *In re McGraw-Hill* is not controlling because that case "involved dueling petitions for writ of mandamus to determine whether two lower courts properly dealt with motions to transfer venue" and, thus, the court's discussion of the underlying merits was

---

[78] *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998).
[79] 307 F.3d 197, 206 (3d Cir. 2002).
[80] *See, e.g.*, *Carlin v. Bezos*, No. 14-CV-02406, 2015 WL 12803608, at *5 (E.D. Pa. June 11, 2015), *aff'd*, 649 F. App'x 181 (3d Cir. 2016).
[81] 909 F.3d 48, 66 (3d Cir. 2018) (citing *Muhammad-Ali*, 832 F.3d at 760–61).
[82] *Id.*
[83] *Id.*

entirely dicta.[84] However, even if not binding, the Third Circuit's reasoning is directly on point, issued recently, and in a related case. Moreover, the Court agrees with the opinion's reasoning and analysis on this issue. Accordingly, the court will treat unauthorized use as an affirmative defense which Scholastic has the burden of proving. For this reason, Defendant's motion for summary judgment on the basis that Plaintiff failed to show unauthorized use is denied.

## B. Plaintiff Had Ownership of Valid Copyright Registrations and Defendant Copied Plaintiff's Work

To meet his prima facie case, then, Krist has the burden of showing that, for the uses of photographs on which he seeks summary judgment, he has a valid copyright and Scholastic copied the copyrighted photographs.[85] Scholastic does not dispute that it copied the photographs listed in the Complaint but it seeks summary judgment on one photograph arguing that Plaintiff never showed that he owned a copyright, and on another 40 uses listed in the complaint arguing that the group registrations rendered Plaintiff's copyright registrations invalid.[86]

As an initial matter, because Krist presented evidence that he had a valid copyright for both "Scarlet Macaw on a Tree Branch,"[87] which provided the basis for three of the infringements listed in the complaint, and "Closed General Motors Plant,"[88] and Scholastic does not dispute its use of any of the photographs or the validity of these copyrights, the Court finds that Krist has met his prima facie burden for these photographs.

### 1. Absence of Copyright Information

Scholastic concedes that "Plaintiff alleges Copyright Registration Numbers and dates for the majority of the Licensed Uses" but argues that Plaintiff has not shown a valid copyright for

---

[84] Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 16.
[85] *See Feist*, 499 U.S. at 361.
[86] Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 24.
[87] Rows 1, 12, and 13 of the Complaint.
[88] Row 7 of the Complaint.

the photograph "Uros women on reed island in Lake Titicaca."[89] The Court agrees that Plaintiff

has failed to allege or to show a copyright registration for this photograph, and therefore,

summary judgment will be granted for any use by Scholastic of this photograph.[90]

## 2. Corbis Group Registrations

Scholastic seeks summary judgment on the photographs that were copyrighted as part of

Corbis's group registrations, arguing that this was an invalid method of copyright.[91]

Section 409(2) of the Copyright Act requires that an application for a copyright

registration "shall be made on a form prescribed by the Register of Copyrights and shall

include . . . the name . . . of the author or authors [and] the title of the work."[92] Plaintiff asserts

that he is "the author and copyright owner of the photographs identified in his Motion for Partial

Summary Judgment"[93] and presents evidence from the United States Copyright Office to support

his assertion.[94]

As explained above, Krist participated in the Corbis Copyright Registration Program.[95]

Through the program, Corbis registered compilations of photographs from different

photographers, including Krist, listing itself as one of the authors, generally listing several of the

photographers, and then including the phrase "& others" or "and (number) other

photographers."[96]

---

89 *Id.* This photograph in listed in row 40 of the Complaint.
90 Moreover, in the earlier round of summary judgment that was dismissed as moot upon the reopening of discovery, Plaintiff had conceded he "has been unable to locate registration information for Image 42-23795684 ["Uros women on reed island in Lake Titicaca"], and therefore withdraws his infringement allegations as to that photograph." Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Doc. No. 58] at 2 n.5.
91 Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 16. These photographs are listed in rows 2–6, 8–11, 14–39, and 41–45 of the Complaint.
92 17 U.S.C. § 409.
93 *See* Declaration of Bob Krist [Doc. No. 84] at ¶ 1.
94 *See* Exhibit 1 & 2 to Declaration of Bob Krist [Doc. No. 84].
95 *See* Declaration of Bob Krist [Doc. No. 84] at ¶ 6.
96 *See, e.g.*, Exhibit 1 & 2 to Declaration of Bob Krist [Doc. No. 84].

Scholastic argues that because only one of the registrations included Krist's name — the rest listed other authors and Krist was included through the phrase "and (number) other photographers" — Krist did not have a valid copyright on the photographs.[97]

"The crux of the issue, then, is whether Corbis' registration of a collection of photos under Section 409 of the Act also effectively registered the underlying individual photos."[98] The Third Circuit has not ruled directly on this issue.[99] Scholastic relies on a single decision from the Southern District of New York, which determined that under the "plain language of the Copyright Act" the Corbis group registrations were invalid for failing to include the individual authors' names.[100]

However, numerous other courts have held that group registrations that do not list the individual authors' names are valid. This includes a later decision from the Southern District of New York which expressly rejected the reasoning in the earlier case determining that "when § 409(2) is read in *context*, the plain text does not require a database registrant like Corbis to list each individual author of each individual work in the database in order to effectively register those individual works."[101] This is because "the key word in §409(2) is actually 'work' rather than 'author.'"[102] The statute defines "collective work" as being a type of "work."[103] The author

[97] Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 24.

[98] *Kashi v. McGraw-Hill Glob. Educ. Holdings*, No. 17-1818, 2018 WL 5262733, at *8 (E.D. Pa. Oct. 23, 2018).

[99] *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 206 n.2 (3d Cir. 2005) (citing *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir.1986)) ("On remand, the District Court will need to determine in the first instance whether this presents a barrier to Kay Berry's registration. Although the issue is not before us on appeal, we note that decisions of this Court and others counsel that registration of a collective work is sufficient to support an action for infringement of the underlying self-contained parts.").

[100] *See Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010); *Muench Photography, Inc. v. John Wiley & Sons, Inc.*, No. 12 CIV. 7502 LAP, 2013 WL 4010273, at *3 (S.D.N.Y. Aug. 6, 2013).

[101] *Sohm v. Scholastic Inc.*, No. 16-CV-7098, 2018 WL 1605214, at *4 (S.D.N.Y. Mar. 29, 2018) (quoting *Yates v. United States*, 574 U.S. 528, 1081–82 (2015) ("[T]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.") (second and third alterations in original).

[102] *Id.* (quoting *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 681 (9th Cir. 2014)).

[103] *Alaska Stock*, 747 F.3d at 681 (citing 17 U.S.C. § 101).

of the collective work here is Corbis, which is listed on all of the group registrations. Therefore, when "the text is considered in the larger context" the plain language of §409(2) validates the Corbis group registrations.[104]

Because the text is unambiguous, the inquiry can end here because the Court is "bound to give effect to the words of Congress."[105] However, even if the text were ambiguous, Krist would still prevail because the Copyright Office's manuals and opinion letters interpreting §409(2) to allow for group registration are entitled to *Skidmore* deference.[106] "A court will afford *Skidmore* deference upon consideration of 'the thoroughness evident in [an agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'"[107] Furthermore, the most important considerations are whether the agency's interpretation "is consistent and contemporaneous with other pronouncements of the agency and whether it is reasonable given the language and purpose of the Act."[108]

When the Copyright Office first started registering works under the Copyright Act of 1976, it interpreted §409(2) to mean that "[w]here a collective work is being registered, the application should name the author of the collective work. The names of the individual authors of separate contributions being registered as part of the claim need not be given on the application."[109] In 1995, the Copyright Office provided an opinion letter to a trade association of

---

[104] *Hagans v. Comm'r of Soc. Sec.,* 694 F.3d 287, 295–96 (3d Cir. 2012).
[105] *Id.* at 295.
[106] A court only applies deference if the text is ambiguous. *See id.*
[107] *Delaware Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corps of Engineers*, 685 F.3d 259, 284 (3d Cir. 2012) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).
[108] *Id.* (quoting *Cleary ex rel. Cleary v. Waldman*, 167 F.3d 801, 808 (3d Cir.1999)).
[109] U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 101 (2d ed. 1978) at § 615.06; *see also Alaska Stock,* 747 F.3d at 686 (citing an amicus brief filed by the United States). The Court notes that in 2014 the Copyright Office issued the Third Edition of the Compendium which now requires all of the authors contained in a collective work to be listed. *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 101 (3d

stock photography agencies explaining that a "registration application submitted for a work created by a large number of authors is considered acceptable "if it names at least three of those authors followed by a statement such as 'and (number) others.'"[110] "Circulars from the Office say the same thing."[111] The Copyright Office stated that it had a "preference" for naming all the authors, but it is "just that—a preference but not a requirement."[112]

Additionally, "the livelihoods of photographers and stock agencies have long been founded on their compliance with the Register's reasonable interpretation of the statute . . . [d]enying the fruits of reliance by citizens on a longstanding administrative practice reasonably construing a statute is unjust."[113] As the Supreme Court has explained, "[i]n light of . . . substantial reliance interests, the longstanding administrative construction of [a] statute should not be disturbed except for cogent reasons."[114]

Moreover, policy reasons supported the Copyright Office's interpretation of the statutory requirement because "it would be absurd and inefficient to require the registrant to list each author for an extremely large number of component works to which the registrant has acquired an exclusive license."[115] "[T]he expensive and error-prone tedium of the Copyright Office typing all the names into its records may explain why the Register of Copyrights was satisfied to have the names of only three authors for so many years."[116]

---

ed. 2017). However, the collective works at issue in this case were all copyrighted before the effective date of the Third Edition. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 599 (4th Cir. 2013).
[110] *Alaska Stock,* 747 F.3d at 677.
[111] *Id.*
[112] *Sohm*, 2018 WL 1605214, at *5; *see also Muench*, 712 F. Supp. 2d at 88.
[113] *Alaska Stock,* 747 F.3d at 686; *see also Kashi*, 2018 WL 5262733, at *7.
[114] *Zenith Radio Corp. v. United States*, 437 U.S. 443 (1978); *see also Sohm*, 2018 WL 1605214, at *5.
[115] *Metro. Reg'l Info*, 722 F.3d at 599 (citation omitted).
[116] *Sohm*, 2018 WL 1605214, at *5 (quoting *Alaska Stock,* 747 F.3d at 681). Scholastic argues that policy reasons support finding that the group copyright registrations were invalid because there is "no way for a third party, searching copyright office records, to determine that Plaintiff was the author of any of the photographs included therein." Defendant's Reply Memorandum of Law in Further Support of Renewed Motion for Summary Judgment [Doc. No. 92] at 8. However, §401 of the Copyright Act, not §409(1), is the notice provision of the Copyright Act. Krist complied with the provisions of §401 giving Scholastic notice that he owned the photographs.

In sum, based on the Copyright Office's consistent interpretation of § 409(2) to allow for group registration, the policy reasons supporting allowing group registration, the reliance interests of photographers and stock photograph agencies, the reasonableness of interpreting the text to mean that it is the "author" of the collective work that must be listed on the registration forms, and the "'specialized experience and broader investigations and information' available to the agency," the Court holds that the Copyright Office's manuals and opinion letters are entitled to *Skidmore* deference.[117]

Therefore, group registrations are valid even if they fail to list all of the individual authors' names so long as they comply with the Copyright Office's instructions. Here, "Corbis complied with the statute's requirements by listing its own name as the author of the collective work,"[118] a title for the collective work, and including "and (number) other photographers."[119] Therefore, the Court holds that Krist had a valid copyright in the photographs listed in the complaint. Thus, Scholastic's Motion for Summary Judgment based on the invalidity of the Corbis Group Registration Program is denied.

Plaintiff, therefore, has met his prima facie burden of showing that there is no genuine dispute that he owned a valid copyright in the photographs (except for "Uros women on reed island in Lake Titicaca") and that Scholastic copied the photographs. The Court thus turns to Scholastic's affirmative defenses.

---

[117] *Id.* (quoting *Muench*, 712 F. Supp. 2d at 91 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001))); *see also Alaska Stock*, 747 F.3d at 684–85; *cf. Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286 (3d Cir. 2004) (en banc) ("We believe that the Copyright Office's longstanding practice of denying registration to short phrases merits deference.") (citations omitted).

[118] *Kashi*, 2018 WL 5262733, at *7.

[119] *See, e.g.*, Exhibit 1 & 2 to Declaration of Bob Krist [Doc. No. 84].

### C. Scholastic's Affirmative Defenses

Scholastic's affirmative defenses are that: 1) the statute of limitations bars Plaintiff's claims; and 2) Plaintiff's claims are based on contract law, rather than copyright law.[120]

#### 1. Statute of Limitations

Plaintiff's complaint was filed on November 30, 2016.[121] The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."[122] Scholastic argues that the claims accrued, and that Krist had knowledge of the claims, more than three years before Krist filed suit.

The "accrual" of a cause of action "occurs at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with knowledge of all the facts could get it past a motion to dismiss for failure to state a claim."[123] At that moment, the three year copyright statute of limitations period begins to run.[124] Therefore, Plaintiff's claims accrued at the moment that Defendant used works in which Plaintiff had a valid copyright.[125]

Additionally, "[t]he separate-accrual rule provides that in the case of successive violations of the Copyright Act, the limitations period runs separately from the date of each violation. In other words, a separate copyright claim accrues upon the occurrence of each infringing act."[126] Thus, "where the infringing acts occurred before and after the three-year

---

[120] Scholastic also argues that for two of the photographs it has met its burden of showing that the use was authorized. However, those claims will be resolved on statute of limitations grounds.
[121] Complaint [Doc. No. 1].
[122] 17 U.S.C. § 507(b).
[123] *William A. Graham Co. v. Haughey*, 646 F.3d 138, 149–150 (3d Cir. 2011) ("*Graham II*").
[124] *See id.* at 147.
[125] *See, e.g., In re McGraw-Hill*, 909 F.3d at 66.
[126] *Raucci v. Candy & Toy Factory*, 145 F. Supp. 3d 440, 449 (E.D. Pa. 2015) (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670–71 (2014)).

limitation period, only those discrete acts occurring within three years of the filing of suit are timely."[127]

### a) The discovery rule

Beyond the statutory periods, "various statutory and judge-made rules [exist] that operate to toll the running of the limitations period—that is, 'to stop its running.'"[128] The discovery rule is one such rule that "operates in applicable cases to toll the running of the limitations period."[129]

Under the "discovery rule," a claim under the Copyright Act is tolled until "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."[130] It is presumed that a plaintiff "should have known of the basis for its claims" when they "had sufficient information of possible wrongdoing to place [them] on inquiry notice or to excite storm warnings of culpable activity."[131] "The test for storm warnings is 'objective,' based on what a reasonable person in the plaintiff's position would have perceived."[132] The defendant bears the burden of "demonstrating such storm warnings, and if they do so, 'the burden shifts to [the plaintiff] to show that it exercised reasonable due diligence and yet was unable to discover its injuries.'"[133] Accordingly, although Plaintiff's claims accrued at the moment that Scholastic

---

[127] *Id.*

[128] *Graham II*, 646 F.3d at 147 (citations omitted).

[129] *Id.* at 150. Notwithstanding Circuit precedent, Defendant argues that the Court should apply the "injury rule" rather than the "discovery rule" because "the continued application of the 'discovery rule' is seriously in doubt following the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), which, despite noting that the Supreme Court had 'not passed on the question' of the applicability of the discovery rule, suggested several times that a copyright claim ordinarily 'accrues' when an infringing act occurs." Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 14. However, "because the Court specifically noted that it was not passing judgment on the injury rule versus discovery rule debate – and, in fact, specifically cited to our Circuit's leading opinion adopting the discovery rule – we are constrained to follow the law of the Third Circuit until instructed otherwise." *Design Basics, LLC v. McNaughton Co.*, No. 3:17-CV-258, 2017 WL 11068761, at *2–4 (M.D. Pa. Nov. 15, 2017) (citing *Petrella*, 572 U.S. at 670 n.4).

[130] *Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.*, No. 12-2061, 2012 WL 5944761, at *3 (E.D. Pa. Nov. 28, 2012) (quoting *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009) ("*Graham I*")).

[131] *Graham I*, 568 F.3d at 438 (quoting *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006)).

[132] *Grant Heilman*, 2012 WL 5944761, at *3 (quoting *Benak*, 435 F.3d at 400).

[133] *Graham I*, 568 F.3d at 438 (quoting *Benak*, 435 F.3d at 400).

copied photographs that Plaintiff owned a valid copyright in, the statute of limitations on these claims was tolled until the point when Plaintiff should have known of the basis for his claims.

### b) Application of the discovery rule

Defendant argues that as soon as Plaintiff received his royalty statements he had knowledge of the prima facie elements of the claim — that Plaintiff had ownership of the copyrights and that Defendant was using the photographs — and therefore Plaintiff "discovered" the claim at these early dates.[134] In other words, Defendant argues that because Plaintiff did not need to know that the use was unauthorized, Plaintiff discovered everything he needed to know in order to bring the lawsuit when he received the statements.

This argument makes a mistake that "even the Supreme Court has [made] on occasion" and conflates the accrual of the cause of action with the tolling of the statute of limitations.[135] At the moment when Scholastic used Plaintiff's copyrighted photographs, the cause of action accrued. However, under the discovery rule, the statute of limitations is tolled until Plaintiff "had sufficient information of possible wrongdoing to place [him] on inquiry notice or to excite storm warnings of culpable activity."[136] Scholastic has not shown that the royalty statements contained sufficient information of possible wrongdoing that they should have placed Plaintiff on inquiry notice. In fact, Krist explained that "[r]oyalty statements from Corbis do not include license parameters. Often, they do not even include the publications or works in which my photographs have been licensed to appear. If I ran across one of my photographs in a Scholastic book, I would have no way of knowing whether that particular use was licensed or not."[137] Scholastic has not

---

[134] Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 10.
[135] *Leonard v. City of Pittsburgh*, No. 2:13-CV-455, 2013 WL 4541727, at *4 (W.D. Pa. Aug. 27, 2013) (quoting *Graham II*, 646 F.3d at 149), *aff'd*, 570 F. App'x 241 (3d Cir. 2014).
[136] *Graham I*, 568 F.3d at 438 (quoting *Benak*, 435 F.3d at 400).
[137] *See* Declaration of Bob Krist [Doc. No. 84] at ¶ 18.

provided any evidence to the contrary. Therefore, the Court cannot hold as a matter of law that receiving the royalty statements would have given Krist reason to suspect that Scholastic was infringing his copyrights.

Scholastic alternatively asserts that Krist's meeting with Harmon on November 14, 2013 triggered storm warnings of culpable conduct such that, with due diligence, Krist should have discovered the injury that forms the basis for the claim.[138] Plaintiff argues that the November 14, 2013 meeting did not trigger any storm warnings because Harmon only provided him with general information and he did not receive specific information such as which publishers were using his photographs.

However, Krist testified in his deposition that at the meeting "[t]hese whole issues came out."[139] Krist further testified that Harmon thought "that I would have a case against several publishers."[140] After the lunch, Krist testified that he informed his wife that "there may be some copyright infringement cases that might be worth pursuing."[141] Therefore, by November 14, 2013, an objectively reasonable person in Plaintiff's position — who was told about the issues involved, informed that he could have a legal case against publishers who published his work, and who understood enough to tell his wife that there were copyright infringement claims potentially worth pursuing — would have had sufficient information of possible wrongdoing to excite storm warnings.

Because Defendant met its burden of demonstrating storm warnings, the burden shifts to Plaintiff to show that he "exercised reasonable due diligence and yet was unable to discover its

---

[138] Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 11–13.
[139] Bergstrom Decl., Ex. C at 126:3–4.
[140] *Id.* at 132:16–17.
[141] *Id.* at 141:22–23.

injuries."[142] Plaintiff cannot do so. Krist testified at his deposition that, rather than exercise due diligence, he "put it up on the shelf" to think about it and it "was relegated to, you know, something that we were going to come back to and do more thinking about."[143] Plaintiff further testified that "I may have pushed it further down the queue than it deserved at that point, but it's just that I don't enjoy learning that I've been ripped off. It's not pleasant. So I had a million other things to deal with, so I dealt with them."[144]

Accordingly, all of Plaintiff's copyright claims against Scholastic that accrued before November 30, 2013 — which was three years before Plaintiff filed his Complaint — are barred by the statute of limitations.

### c) Defendant's affirmative defense based on the statute of limitations

Scholastic asserts that all of Plaintiff's claims accrued before November 30, 2013, and are therefore time-barred.[145] In response, Plaintiff argues that because Scholastic has failed to provide "evidence reflecting the dates on which its infringements began and ended on a claim-by-claim basis . . . it is impossible for the Court to determine whether any concluded before November 30, 2013."[146]

Plaintiff is mostly correct that the Court cannot determine the precise dates of alleged infringements. But, importantly, each infringing act is its own copyright claim and is subject to its own calculation of the statute of limitations.[147] So while summary judgment will be granted

---

[142] *Graham I*, 568 F.3d at 438 (quoting *Benak*, 435 F.3d at 400).
[143] Bergstrom Decl., Ex. C at 141:25–142:6; 148:4–6.
[144] *Id.* at 148:9–148:14.
[145] Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 9.
[146] Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Renewed Motion for Partial Summary Judgment [Doc. No. 93] at 3; *see also* Plaintiff's Memorandum of Law in Opposition to Defendant's Renewed Motion for Summary Judgment [Doc. No. 90] at 4–5.
[147] *Raucci*, 145 F. Supp. 3d at 449–50 (citing *Petrella*, 572 U.S. at 670–71).

for any claims that accrued before November 30, 2013, the ruling is limited to those claims for which there is no genuine dispute as to when they occurred.

The record is devoid of evidence establishing when each infringing act occurred for 35 of the 45 claims on which Scholastic seeks summary judgment. Both because it is an affirmative defense, and because Defendant seeks summary judgment based on the statute of limitations, the burden is on Scholastic to show that there is no genuine dispute that the infringing acts occurred before November 30, 2013. Because Scholastic fails to meet this burden, Scholastic's motion for summary judgment based on the statute of limitations is denied for those 35 claims.

As to the remaining ten claims, which consists of all eight[148] claims for which Plaintiff seeks summary judgment, along with two others[149] — "Memorial to Victims of September 11th Terrorist Attacks"[150] and "Machu Picchu"[151] — the record has been adequately developed for the Court to determine when the alleged infringing use occurred.

Plaintiff presents evidence that "Rainforest Landscape"[152] appeared in the title page of Scholastic's publication *Rain Forest Homes*[153] and that Scholastic made 221,682 copies of the publication.[154] Scholastic's license for this photograph authorized a print run of only 50,000 and

---

[148] As explained above, although Plaintiff seeks partial summary judgment on five claims, he actually lists eight of the claims in the complaint. These eight include the use of "Rainforest Landscape," two uses of "Lifeguard on Duty," two uses of "Touro Synagogue Altar," and three uses of "Scarlet Macaw on a Tree Branch."

[149] Scholastic asserts as an additional affirmative defense for two of Plaintiff's claims — "Memorial to Victims of September 11th Terrorist Attacks" and "Machu Picchu" — that the license from Corbis shows that Scholastic's use was within the scope of its license, i.e. that the use was authorized. *See* Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 15–16. In support of this defense, Scholastic presents licenses authorizing its use of the two photographs, *see* Bergstrom Decl., Ex. Z & AA, and royalty statements showing that it paid for its use of "Memorial to Victims of September 11th Terrorist Attacks" in 2009 and "Machu Picchu" in 2011. *See* Bergstrom Decl., Ex. CC & DD. Based on these licenses and royalty statements, the record is developed enough to determine when the use of each photograph occurred.

[150] Identified in Exhibit 1, row 34 of the Complaint.

[151] Identified in Exhibit 1, row 38 of the Complaint.

[152] Identified in Exhibit 1, row 21 of the Complaint [Doc. No. 1].

[153] Exhibit 1 to Murphy Declaration [Doc. No. 85].

[154] Exhibit 2 to Murphy Declaration [Doc. No. 85].

included an expiration date of January 9, 2008.[155] This claim accrued on June 29, 2007 when Scholastic ordered 65,000 copies of the book — 15,000 more than the license allowed.[156] Between June 29, 2007 and May 1, 2013, Scholastic placed another 13 orders all together totaling 127,686 copies of the photograph.[157] Under the discovery rule, the statute of limitations for each of these infringing acts was tolled up until November 14, 2013. But because Plaintiff failed to file suit within three years of November 14, 2013, Scholastic is granted summary judgment on each of those 14 orders. However, 28,996 copies of the photograph were ordered after November 30, 2013 in three separate orders.[158] Therefore, the statute of limitations is not a defense for those orders.

Scholastic's use of "Lifeguard on Duty" is equally complicated. Both of Scholastic's versions of *Thunder and Lightning* display the photograph on page 26,[159] and between the two versions, the photograph was copied 518,097 times.[160] The version of *Thunder and Lightning* with the ISBN 10 of 0439269881 was copied 319,699 times and the final order was on October 25, 2010.[161] The version of *Thunder and Lightning* with the ISBN 10 of 0439693233 was copied 198,398 times.[162] 145,498 of the copies were ordered before November 30, 2013.[163] However, the remaining 52,900 were ordered after November 30, 2013.[164] Therefore, Defendant is granted summary judgment for all of the claims of copyright infringement of "Lifeguard on Duty" except for the final 52,900 copies.

---

[155] Exhibit 13 to Murphy Declaration [Doc. No. 85].
[156] Exhibit 2 to Murphy Declaration [Doc. No. 85].
[157] *See id.*
[158] *See id.*
[159] Exhibit 10 & 11 to Murphy Declaration [Doc. No. 85].
[160] Exhibit 12 to Murphy Declaration [Doc. No. 85].
[161] *See id.*
[162] *See id.*
[163] *See id.*
[164] *See id.*

The record further shows that Scholastic's license allowed a print run of up to 500,000 copies[165] of "Touro Synagogue Altar" in Scholastic's publication *Scholastic Book of World Records 2012*. However, Scholastic printed 511,202 copies of the book.[166] There is no dispute that the final order of *Scholastic Book of World Records 2012* was placed on July 27, 2012.[167] Similarly, the record shows that Scholastic made 847,350 copies[168] of the book *Scholastic Book of World Records 2010* which included "Touro Synagogue Altar," with the last order occurring on February 22, 2010.[169] Additionally, the last order of *Disney Yearbook 2006*, which Plaintiff identifies as the basis for his three claims related to "Scarlet Macaw on a Tree Branch," was on March 1, 2006.[170] Therefore, Defendant is granted summary judgment for these claims and accordingly Plaintiff's motion for partial summary judgment is denied for these claims.

As to "Memorial to Victims of September 11th Terrorist Attacks" and "Machu Picchu," Scholastic presented licenses and royalty statements showing that its use of "Memorial to Victims of September 11th Terrorist Attacks" was in 2009 and its use of "Machu Picchu" was in 2011.[171] Because these royalty statements show use before November 30, 2013, and Plaintiff fails to demonstrate any use after November 30, 2013, the claim for infringement is time-barred and Defendant's motion for summary judgment is granted as to these two photographs.[172]

---

[165] Exhibit 14 to Murphy Declaration [Doc. No. 85].
[166] Exhibit 5 to Murphy Declaration [Doc. No. 85].
[167] Exhibit 5 to Murphy Declaration [Doc. No. 85].
[168] Exhibit 7 to Murphy Declaration [Doc. No. 85].
[169] *See id*.
[170] Exhibit 9 to Murphy Declaration [Doc. No. 85]. In his motion, Plaintiff lists all three times "Scarlet Macaw on a Tree Branch" was listed in the Complaint as his basis for a finding that Defendant's use of the photograph in *Disney Yearbook 2006* proved infringement. *See* Plaintiff's Renewed Motion for Partial Summary Judgment [Doc. No. 86] at 9.
[171] Bergstrom Decl., Ex. CC & DD.
[172] Additionally, based on the licenses and royalty statements, Defendant has met its burden of showing authorization for these two photographs and Plaintiff has failed to show any infringement. For this reason as well, Defendant's motion for summary judgment will be granted as to these photographs.

## 2. Plaintiff's claims sound in copyright law

Scholastic advances an additional argument based on the PVAs: that under New York law, which governs the PVAs,[173] "[n]ot every breach of a license amounts to copyright infringement."[174] Scholastic argues that Krist's claims are actually contract claims and not actionable under copyright law.[175]

The argument turns on the distinction in New York law between a covenant and a condition. A covenant is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."[176] A condition precedent is "an act or event . . . which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."[177]

In the context of a license of copyrighted works, "'if the licensee's improper conduct constitutes a breach of a covenant undertaken by the licensee and if such covenant constitutes an enforcible contractual obligation, then the licensor will have a cause of action for breach of contract,' not copyright infringement."[178] However, "if the nature of a licensee's violation consists of a failure to satisfy a condition to the license, it follows that the rights dependant upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the

---

[173] Each PVA states: "Any dispute regarding this Agreement shall be governed by the laws of the State of New York[.]" When a federal question case concerns a contract, the Court looks to the choice of law principles of the forum state to determine which state's law applies. *See Gregoria v. Total Asset Recovery, Inc.*, No. CIV.A. 12-4315, 2015 WL 115501, at *3 (E.D. Pa. Jan. 7, 2015) (citing *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007)). "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Therefore, the Court will apply New York law.
[174] Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 20.
[175] *See id.*
[176] *Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*, 460 N.E.2d 1077, 1081 (N.Y. 1984).
[177] *IDT Corp. v. Tyco Grp.*, 918 N.E.2d 913, 916 (2009); *see also Graham*, 144 F.3d at 237 (explaining that a condition is "any fact or event which qualifies a duty to perform.").
[178] *Graham*, 144 F.3d at 236–37 (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.15[A], at 10–120) (cleaned up).

licensee is without authority from the licensor and may therefore, constitute an infringement of copyright."[179]

Scholastic argues that under New York law there is "a presumption that terms of a contract are covenants rather than conditions," and that there is no language in any of the invoices or PVAs sufficient to defeat the presumption in favor of covenants.[180]

The Court disagrees with Scholastic's argument because under New York law, the PVAs contain conditions precedent rather than covenants. "Express conditions are those agreed to and imposed by the parties themselves."[181] "Express conditions must be literally performed."[182] Because "[c]onditions precedent are not readily assumed . . . the law . . . demands that conditions precedent be 'expressed in unmistakable language.'"[183] The words "if," "unless," "until,"[184] "on condition that,"[185] and "except"[186] are all examples of "unmistakable language of condition."[187]

The PVAs all contain the language of condition "in unmistakable language" sufficient to overcome the presumption of a covenant.[188] The Terms and Conditions ("T&Cs") attached to the 2004 PVA declared that, "*unless* otherwise specified in a separate writing signed by Corbis, your reproduction of the images is limited to . . . the specific use described in your invoice."[189] Similarly, the Corbis/Scholastic Library Publishing Content License Agreement attached to the 2008 and 2011 PVAs provided that "*[e]xcept* where specifically permitted in the Agreement,

---

[179] *Id.* at 237 (quoting 3 *Nimmer on Copyright*, § 10.15[A], at 10–121) (cleaned up).
[180] Defendant's Memorandum of Law in Opposition to Plaintiff's Renewed Motion for Partial Summary Judgment [Doc. No. 89] at 15 (quoting *Graham*, 144 F.3d at 236).
[181] *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995).
[182] *Id.*
[183] *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016).
[184] *MHR Capital Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009); *Oppenheimer*, 660 N.E.2d at 418; *Latham Land I, LLC v. TGI Friday's, Inc.*, 96 A.D.3d 1327, 1329 (N.Y. App. Div. 2012).
[185] Restatement (Second) of Contracts § 226 (1981); *see also Bank of New York Mellon*, 821 F.3d at 305.
[186] *Weiss v. City of New York*, 731 N.E.2d 594, 596 (N.Y. 2000).
[187] *Oppenheimer*, 660 N.E.2d at 418.
[188] *Bank of New York Mellon*, 821 F.3d at 305.
[189] Bergstrom Decl., Ex. U (emphasis added).

[Scholastic] may not distribute, publish, display or otherwise use in any way, the Rights Managed Content."[190] The New York Court of Appeals has specifically held that the use of terms "unless"[191] and "except"[192] "constitutes 'unmistakable language of condition.'"[193] Therefore, the language of the agreements created a condition in unmistakable terms — exceeding the uses authorized by the invoices constituted a violation of the condition in the agreements between Corbis and Scholastic.

In addition to the PVAs containing the unmistakable language of condition, "specific, talismanic words are not required" to create a condition.[194] Therefore, "[c]ourts applying New York law find that expressly conditioning a license on receipt of payment creates a condition[195] and, similarly, that where parties agree that failure to pay [will] be viewed as copyright infringement, a condition has likely been created."[196]

The PVAs contained such language conditioning the license on receipt of payment[197] and stating that the failure to pay would be viewed as copyright infringement.[198] The T&Cs in the 2004 PVA stated that "[a]ny license granted by Corbis is *conditioned* upon . . . Corbis' receipt of full payment by [Scholastic] for such use as invoiced by Corbis. [Scholastic's] failure to make full payment when due shall terminate any licenses granted to [Scholastic] and entitles Corbis to pursue all remedies available under copyright laws."[199] The 2008 and 2011 PVAs stated that

---

[190] Bergstrom Decl., Ex. V &W (emphasis added).
[191] *MHR*, 912 N.E.2d at 47.
[192] *Weiss*, 731 N.E.2d at 596.
[193] *MHR*, 912 N.E.2d at 47 (citing *Oppenheimer*, 660 N.E.2d at 418).
[194] *Bank of New York Mellon*, 821 F.3d at 305.
[195] *Kashi*, 2018 WL 5262733, at *5 (citing *Tangore v. Mako's, Inc.*, 2003 WL 470577, at *7 (S.D.N.Y. Jan. 6, 2003); *Preferred Mortg. Brokers, Inc. v. Byfield*, 723 N.Y.S.2d 230, 231 (N.Y. App. Div. 2001)); *Marcantonio v. Rousso*, 257 A.D.2d 650, 651 (N.Y. App. Div. 1999).
[196] *Id.* (citing *Powlus v. Chelsey Direct, LLC*, No. 09 CIV 10461, 2011 WL 135822, at *5 (S.D.N.Y. Jan. 10, 2011)).
[197] *See Kashi*, 2018 WL 5262733, at *5 (citing *Tangore*, 2003 WL 470577, at *7).
[198] *Id.* (citing *Powlus*, 2011 WL 135822, at *5).
[199] Bergstrom Decl., Ex. U (emphasis added).

"[a]ny and all licenses granted by Corbis are *conditioned* upon . . . Corbis' receipt of full payment by [Scholastic] as identified in the applicable invoice" and that "Corbis shall be entitled to pursue all other remedies available under copyright and other laws" in the event of Scholastic's "failure to . . . make payment when due."[200] Thus, because the license agreements expressly conditioned the licenses on receipt of payment and stated that the failure to pay would constitute a copyright infringement, the licenses operated as conditions, and relief lies in copyright law.[201]

The Court's determination accords with the Third Circuit's ruling in *In re McGraw-Hill* which held that:

> [Plaintiff] is the exclusive owner of the rights to reproduce, distribute, and display the photographs by virtue of the Copyright Act. McGraw-Hill is an infringer to the extent it exceeds any license that [Plaintiff or a sub-licensor granted it. The limitations in the license are not a contractual benefit to [Plaintiff], because his right to those limitations arises from the Copyright Act.[202]

Defendant argues that *In re McGraw* is not controlling because the Third Circuit was "determining whether the photographers were bound to an arbitration clause in McGraw-Hill's version of the PVAs."[203] However, despite the differences between the two cases, the Third Circuit unambiguously held that claims, similar to those at issue here, for exceeding a license to use photographs are grounded in copyright law and not contract law.

Scholastic also argues that the PVAs "provide a built-in solution for use outside of the face of the invoice."[204] Scholastic asserts that "the PVAs contained a series of agreed-to 'buckets' that assigned a particular price depending on the usage requested" and so "the PVAs

---

[200] Bergstrom Decl., Ex. V &W (emphasis added).
[201] *See Kashi*, 2018 WL 5262733, at *5 (citing *Tangorre*, 2003 WL 470577, at *7; *Byfield*, 723 N.Y.S.2d at 231).
[202] *In re McGraw-Hill*, 909 F.3d at 61.
[203] Defendant's Renewed Motion for Summary Judgment [Doc. No. 82] at 23.
[204] *Id.* at 22.

actually built in a contractual solution in a case where any license term is exceeded: Scholastic went to the next, or applicable, bucket, paying slightly more for an increased use."[205] In essence, Scholastic argues that its alleged conduct was not copyright infringement because the PVAs contractually allowed it to "use photos first (or exceed the use previously licensed) and then license and pay for that use later."[206]

However, "the pricing terms in the [PVAs] did not mean that 'overuse' of the plaintiff's images was contemplated by the parties' agreement because 'specifying a price if you agree to a transaction in the future is not the same as agreeing to a transaction.'"[207] The PVAs operated as a framework for the invoices that Scholastic requested for each photograph it wanted to use, not as a blanket license authorizing whatever use Scholastic desired as long as it later paid.

Furthermore, the PVAs expressly provided that unauthorized use of the images would constitute copyright infringement. The 2004 PVA states that Scholastic's "reproduction of Images is limited to . . . the specific use described in your invoice."[208] Likewise, the 2008 and 2011 PVAs granted Scholastic "a limited, non-exclusive right to use the Rights Managed Content . . . solely as specified in the Invoice."[209] By their terms, the PVAs make it clear that Scholastic did not have the right to unilaterally exceed the use allowed in the invoices and then simply pay at a later time for that use based on the applicable bucket. Rather, Scholastic was limited to the use specified in the invoices.

In sum, the Court determines that Krist's suit is based on copyright, rather than contract law. The unmistakable conditional language in the PVAs, the PVAs specifying that the invoices

---

[205] Defendant's Memorandum of Law in Opposition to Plaintiff's Renewed Motion for Partial Summary Judgment [Doc. No. 89] at 14–15.
[206] *Harrington v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 1:17-CV-02960-RM-SKC, 2019 WL 1317752, at *3 (D. Colo. Mar. 22, 2019).
[207] *Id.* (quoting *Kashi*, 2018 WL 5262733, at *6).
[208] Bergstrom Decl., Ex. U (emphasis added).
[209] Bergstrom Decl., Ex. V & W (emphasis added).

were the extent of the authorized use, and the Third Circuit's opinion in *In re McGraw-Hill* all support this conclusion. Therefore, the Court will not grant summary judgment based on Defendant's argument that all of Plaintiff's claims are contract claims instead of copyright claims.

### D) Defendant's infringement was not willful as a matter of law

The Court grants Plaintiff's Motion for Partial Summary Judgment on the claims related to "Rainforest Landscape" and "Lifeguard on Duty" for infringement after November 30, 2013 because Plaintiff showed that he had a valid copyright, Scholastic copied the photos, and Defendant presented no valid affirmative defenses. Because the Court grants Plaintiff's motion for summary judgment in part, the Court must determine whether the willfulness of the infringements can be determined as a matter of law. A finding of willfulness allows a court to "increase the award of statutory damages" from a maximum of $30,000 for each infringement to a maximum of $150,000.[210]

"Willfulness is not defined in either the Copyright Act or its legislative history."[211] However, courts have required plaintiffs to prove "willfulness" by showing "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."[212] Moreover, "awards outside the ordinary statutory range are made only in 'exceptional cases,'[213] and there must be evidence of especially egregious circumstances before the enhanced damages become appropriate."[214] Therefore, the cases where courts have awarded "heightened damages"

---

[210] 17 U.S.C. § 504.
[211] *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, No. CIV.A.03-4962, 2005 WL 67077, at *5 (E.D. Pa. Jan. 11, 2005).
[212] *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005).
[213] *Schiffer*, 2005 WL 67077, at *5 (quoting 1 Nimmer on Copyright § 14.04[B][3]).
[214] *Id.* (citation omitted).

tend to be "where a defendant is a counterfeiter, a chronic copyright infringer, or if, after receiving notice of Plaintiff's claims, takes no action to investigate and merely continues its' infringing behavior."[215]

For purposes of summary judgment, Plaintiff must show that Defendant was either actually aware of the infringing activity or acted with reckless disregard for Plaintiff's right. However, the record is not developed on this issue. Because there is a genuine disputed material fact as to whether Defendant had actual knowledge or acted with reckless disregard for Plaintiff's rights, summary judgment on the issue of willfulness is not appropriate in this case.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's partial motion for summary judgment on the issue of liability is granted in part and denied in part and Defendant's motion for summary judgment is granted in part and denied in part. For ease of reference: Defendant's Motion for Summary Judgment is granted as to: 1) "Uros women on reed island in Lake Titicaca"; and 2) Any infringements occurring before November 30, 2013 which includes the use of "Touro Synagogue Altar," "Scarlet Macaw on a Tree Branch," "Memorial to Victims of September 11th Terrorist Attacks," and "Machu Picchu." Plaintiff's Motion for Partial Summary Judgment is granted as to the final 28,996 copies of "Rainforest Landscape" in *Rainforest Homes* and the final 52,900 copies of "Lifeguard on Duty" in *Thunder and Lightning*. Summary judgment is denied on all other claims.

---

[215] *Id.* (citations omitted).